IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:20-CV-43-BM

HERBERT SALTER, )
)
               Plaintiff, )
)
v. )
) **ORDER**
KILOLO KIJAKAZI, )
  Acting Commissioner of Social Security, )
)
               Defendant. )

     This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-18, DE-20] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Herbert Salter ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). Both parties submitted memoranda in support of their respective motions [DE-19, -21]. Plaintiff responded to Defendant's memorandum in support of the motion for judgment on the pleadings [DE-22] and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the court grants Plaintiff's Motion for Judgment on the Pleadings [DE-18], denies Defendant's Motion for Judgment on the Pleadings [DE-20], and remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## I. STATEMENT OF THE CASE

     Plaintiff protectively filed an application for a period of disability and DIB on February 23, 2018, alleging disability beginning April 1, 2017. Transcript of Proceedings ("Tr.") 116, 118.

Plaintiff's alleged onset date was subsequently amended to November 19, 2017.  Tr. 258.  His claim was denied initially.  Tr. 159.  Plaintiff filed a request for reconsideration (Tr. 168) and was denied upon reconsideration on September 12, 2018 (Tr. 170).  On September 27, 2018, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ").  Tr. 178-80.  A hearing before the ALJ was held on March 4, 2020, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  Tr. 60-115.  On April 2, 2020, the ALJ issued a decision denying Plaintiff's request for benefits.  Tr. 12-30.

On April 2, 2020, Plaintiff requested a review of the ALJ's decision by the Appeals Council (Tr. 1) and submitted additional evidence as part of his request (Tr. 35-59).  After finding that the additional evidence did not show a reasonable probability that it would change the outcome of the decision, the Appeals Council denied Plaintiff's request for review on April 28, 2020.  Tr. 1-2.  Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II.  STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  While substantial evidence is not a "large

or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"],"
> i.e., currently working; and (2) must have a "severe" impairment that (3) meets or
> exceeds [in severity] the "listings" of specified impairments, or is otherwise
> incapacitating to the extent that the claimant does not possess the residual
> functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step,

3

the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and, adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 30. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since November 19, 2017, the alleged onset date. Tr. 17.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, ulnar neuropathy, obstructive sleep apnea, depression, and anxiety. Tr. 17. The ALJ also found Plaintiff had the non-severe impairments of: gastroesophageal reflux disease and alcohol use disorder, in full remission. Tr. 18. However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental

4

impairments have resulted in moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and, moderate limitation in adapting or managing oneself. Tr. 19.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> [C]laimant could occasionally operate right foot controls; occasionally push/pull with the bilateral upper extremities; and occasionally stoop, kneel, crouch, or crawl. No climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional reaching overhead bilaterally; and avoid concentrated exposure to pulmonary irritants, unprotected heights, moving machinery, and hazardous machinery. The claimant could understand, remember, and carry out instructions consistent with a reasoning level of "two" or "three" as defined in the Dictionary of Occupational Titles. He could sustain concentration, attention, and pace sufficiently enough to carry out those instructions over the course of an eight-hour workday and at two-hour intervals, work in proximity to, but not coordination with coworkers and supervisors, and have only superficial contact with the public. The claimant could work in a low stress setting specifically defined to mean no fast-paced production, only simple work related decisions, and few or no changes in the work setting.

Tr. 20. In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of the alleged symptoms reasonably expected to be caused by Plaintiff's medically determinable impairments were "not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 21.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work. Tr. 28. Nonetheless, at step five, upon considering Plaintiff's age,

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 28.

## V. OVERVIEW OF PLAINTIFF'S CONTENTIONS

In this case, Plaintiff alleges the ALJ erred in two ways: (1) in her evaluation of the medical opinion evidence; and (2) by failing to perform a function-by-function analysis of Plaintiff's contested and relevant ability to rotate his neck when assessing the residual functional capacity. Pl.'s Mem. [DE-19] at 1. Each will be discussed below.

## VI. DISCUSSION

### A. Function-by-function analysis regarding Plaintiff's ability to rotate his neck

Plaintiff contends that the ALJ erred by failing to perform a function-by-function analysis of Plaintiff's contested and relevant ability to rotate his neck when assessing the residual functional capacity. Pl.'s Mem. [DE-19] at 1. Specifically, at issue is whether the ALJ was required to include an additional limitation in the RFC regarding Plaintiff's ability to rotate and twist his neck, or alternatively, explain why no such limitation was required. *Id.* at 16-17. Plaintiff argues that the ALJ was required to, in light of the medical evidence supporting that Plaintiff had a limited ability to rotate and twist his neck. *Id.*

"A Social Security claimant's RFC represents 'the most [he] can still do despite [his] limitations.'" *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting 20 C.F.R. § 416.945(a)(1)). In assessing an individual's RFC, an ALJ considers that person's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Further, "the ALJ must consider all of the claimant's medically determinable impairments of which the ALJ is aware, including those not labeled severe at step two."

6

*Shinaberry v. Saul*, 952 F.3d 113 (4th Cir. 2020) (quoting *Monroe v. Colvin*, 826 F.3d 176, 178 (4th Cir. 2016)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe*, 826 F.3d at 189 (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). Indeed, "the ALJ's logical explanation is just as important as the other two [components] . . . and our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). The ALJ is not required to discuss every piece of evidence in the record. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). However, where a court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

Additionally, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *McNeill v. Saul*, No. 5:20-CV-244-M, 2021 WL 3701348, at *3 (E.D.N.C. June 2, 2021) (alterations in original) (quoting *Mascio*, 780 F.3d at 636). And while there is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[,]" courts have found remand warranted where the ALJ fails to assess a "contested" function that is "critically relevant to determining [a

7

claimant's] disability status . . . ." *Dowling*, 986 F.3d at 388-89 (remanding case where the ALJ failed to evaluate the plaintiff's ability to sit when it was a contested function critical to determining the plaintiff's disability status, and stating that the ALJ should have included "an analysis [of the plaintiff's ability to sit] that was separate from the ALJ's appraisal of [the plaintiff's] ability to perform other functions, and [this analysis] should have been accompanied by 'a narrative discussion describing' the evidence supporting it").

Here, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions. The claimant could occasionally operate foot controls; occasionally push/pull with the bilateral upper extremities; and occasionally stoop, kneel, crouch, or crawl. No climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional reaching overhead bilaterally; and avoid concentrated exposure to pulmonary irritants, unprotected heights, moving machinery and hazardous machinery. The claimant could understand, remember, and carry out instructions consistent with a reasoning level of "two" or "three" as defined in the Dictionary of Occupational Titles. He could sustain concentration, attention, and pace sufficiently enough to carry out those instructions over the course of an eight-hour workday and at two-hour intervals, work in proximity to, but not coordination with coworkers and supervisors, and have only superficial contact with the public. The claimant could work in a low stress setting specifically defined to mean no fast-paced production, only simple work related decisions, and few or no changes in the work setting.

Tr. 20.

Absent in the RFC is a limitation concerning Plaintiff's ability to rotate and twist his neck. The remainder of the ALJ's written decision similarly does not provide analysis or discussion of how Plaintiff's decreased range of motion of the neck impacts his ability to work. Plaintiff argues that the ALJ erred by failing to include a limitation for neck rotation and twisting or failing to explain why no such limitation was needed. Pl.'s Mem. [DE-19] at 15-17. Defendant, however, maintains that "Plaintiff offers no argument that an additional restriction was so compelling on the

8

evidence in this record that any reasonable factfinder was compelled to incorporate it in the RFC finding." Def.'s Mem. [DE-21] at 12. Defendant asserts that the ALJ properly considered medical evidence that Plaintiff suffered from some reduction in cervical spine range of motion, and the ALJ's "RFC finding accounts for any credibly established functional limitations relevant to an ordinary work setting." *Id.* at 13-16.

The crux of Defendant's argument is that substantial evidence, and even the weight of the evidence, supports the ALJ's RFC assessment as currently written. That is, the evidence supports the ALJ's decision not to include a limitation relating to Plaintiff's ability to rotate and twist his neck. Defendant does not, however, argue that there is *no* medical evidence in the record supporting that Plaintiff is limited in his ability to rotate and twist his neck. To the contrary, Defendant cites to multiple places in the ALJ's written decision acknowledging that such medical evidence does exist. *Id.* at 13-14, 16. In so doing, Defendant highlights the presence of at least conflicting evidence, considered by the ALJ, regarding Plaintiff's ability to rotate and twist his neck.

For example, in her written decision, the ALJ cites to the May 9, 2018 record of Christopher Lacroix, M.D. Tr. 21-22. The ALJ states that upon examination, Dr. Lacroix found Plaintiff "had a moderate reduction in his capacity to lift and turn his head[,]" as well as neck pain and neck stiffness. Tr. 22 (citing Tr. 548). The ALJ also cites to a February 26, 2020 letter by Theodore Nicholas, M.D. FAAPMR, stating that Plaintiff can "perform *occasional* repetitive bending or twisting at the cervical spine *with some limitations*." Tr. 27 (emphasis added) (citing Tr. 1200). Next, the ALJ considers the findings of State agency consultants Robert Pyle, M.D. and Frank Virgili, M.D. Tr. 27. The medical records of both consultants again note that Plaintiff suffers from

9

limited range of motion in his cervical spine and shoulders. Tr. 128, 146. Finally, the ALJ cites to an October 12, 2017 MRI of Plaintiff's cervical spine. Tr. 24. The MRI results evince that Plaintiff suffers from multilevel degenerative disc disease and fact arthropathy, including moderate to severe neural foraminal stenosis. Tr. 407-09.

It is of note that the ALJ specifically questioned the VE at Plaintiff's hearing about the effect of a limitation for restricted neck rotation. Tr. 109. In her second hypothetical question posed to the VE, the ALJ asked the VE to "please assume all the limitations from Hypothetical No. 1 and, in addition, *the individual should not engage in repetitive rotation of the neck*. Could such a [sic] individual still perform the three jobs you mentioned?" Tr. 109 (emphasis added). In response, the VE noted a limitation for no repetitive rotation of the neck at the light exertional level of work would preclude a claimant from employment. Tr. 109-11. Yet, despite this apparent acknowledgement that Plaintiff may have a limited range of motion of the neck, the ALJ does not include an RFC limitation or explain why no such limitation was required in Plaintiff's RFC.

Because of the ALJ's lack of analysis and explanation related to Plaintiff's possible neck limitation, the court finds that remand here is necessary. *See Dowling*, 986 F.3d at 388-89 (finding remand warranted where the ALJ fails to assess a contested function that is critically relevant to determining disability status); *see also McNeill*, 2021 WL 3701348, at *3 (quoting *Mascio*, 780 F.3d at 636) (stating that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record"). As discussed above, Plaintiff's ability to rotate and twist his neck is a contested function and at least contradictory evidence exists regarding his ability to rotate and twist his neck. The assessment of this function is also critically relevant to, and potentially outcome determinative of, Plaintiff's

10

disability status. The VE testified that limiting Plaintiff to no repetitive rotation of the neck would preclude him from employment. It is incumbent upon the ALJ to assess Plaintiff's ability to rotate and twist his neck, and to explain whether Plaintiff requires any additional functional limitation in his RFC related to this ability.

Defendant makes an additional argument as to why the ALJ was not required to include a limitation for Plaintiff's ability to rotate and twist his neck, based on the case *Shinaberry v. Saul*, 952 F.3d 113 (4th Cir. 2020). Defendant cites to *Shinaberry* for the proposition that "[i]f a reasonable factfinder could have concluded that a claimant failed to prove an additional RFC restriction, the substantial evidence standard requires that the ALJ's findings be affirmed." Def.'s Mem. [DE-21] at 15. However, the court finds this argument unpersuasive. Contrary to Defendant's assertion, the court in *Shinaberry* found that an ALJ's omission of a sit-stand opinion in the RFC was not an error because the plaintiff "point[ed] to *no medical evidence* in support of this limitation," and relied only on subjective statements to show that such a limitation existed. *Shinaberry*, 952 F.3d at 123 (emphasis added). Unlike in *Shinaberry*, there is at least conflicting medical evidence here that Plaintiff is limited in his ability to rotate and twist his neck. Thus, Defendant's argument here is unavailing.

In sum, the ALJ's failure to include a limitation relating to Plaintiff's ability to rotate and twist his neck or explain why no limitation was needed frustrates meaningful review by the court. The ALJ fails to "build[] an accurate and logical bridge from the evidence to [her apparent] conclusion" that no limitation was needed relating to Plaintiff's ability to rotate and twist his neck. *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Thus, the court is left to guess at how the ALJ came to her conclusion. Because this is a contested, and

11

potentially outcome determinative function, remand here is necessary for the ALJ to provide a narrative discussion of her findings.

Accordingly, the court remands this case to the Commissioner for further proceedings. On remand, the Commissioner should explain how the evidence leads to each conclusion regarding Plaintiff's limitations, so that meaningful judicial review would be permitted, if necessary.

**B.     Evaluation of the medical opinion evidence**

Plaintiff next contends that the ALJ erred in her evaluation of the medical opinion evidence. Pl.'s Mem. [DE-19] at 1. Specifically, Plaintiff argues that the ALJ fails to properly evaluate the medical opinion of Theodore W. Nicholas, M.D. FAAPMR, stating that Plaintiff can only occasionally reach bilaterally in all directions including overhead. *Id.* at 13-15. Plaintiff contends that in articulating the persuasiveness of Dr. Nicholas's opinion, the ALJ fails to explain how she considered the factors of supportability and consistency as required by the regulations.[2] *Id.* at 13.

Defendant argues that "the applicable regulations do not categorically require a specific response-by-response parsing of a medical source's various opinions." Def.'s Mem. [DE-21] at 10 (citing 20 C.F.R. § 404.1520c). Rather, Defendant states that "[u]ltimately the inquiry under the substantial evidence standard must be case-by-case based on all the evidence and surrounding circumstances." Def.'s Mem. [DE-21] at 10 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). Defendant asserts that the ALJ properly considered all of the medical opinion evidence, and the ALJ's findings are supported by substantial evidence. *Id.* at 8-15. Defendant does not

---

[2] In this section, Plaintiff also argues that the ALJ erred by failing to either include a limitation for repetitive rotation and twisting of the neck in the RFC or explain why such a limitation was not needed, even though this limitation was addressed in the opinions of both Dr. Nicholas and Dr. Lacroix. *Id.* at 15-16. This argument appears to be a rehashing of Plaintiff's previous argument discussed above in section VI.A. Thus, the court will not independently address this argument a second time.

12

address whether the ALJ articulated the factors of supportability and consistency as they relate to the opinion of Dr. Nicholas.

Because the court has remanded the case above, the court need not reach a conclusion on this issue. However, on remand, the Commissioner should consider Plaintiff's argument here (Pl.'s Mem. [DE-19] at 12-16) and ensure that all medical opinions are evaluated in accordance with the regulations. Specifically, because Plaintiff filed his claim on February 23, 2018 (Tr. 15), the applicable regulation regarding the evaluation of medical source opinions is 20 C.F.R. § 404.1520c. Section 404.1520c instructs that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, the regulation provides five factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings, the five factors being: "(1) Supportability . . . (2) Consistency . . . (3) Relationship with the claimant . . . (4) Specialization . . . [and] (5) Other factors . . . that tend to support or contradict a medical opinion or prior administrative finding. *Id.* §§ 404.1520c(c)(1)-(5). The regulation specifies that supportability and consistency are the most important factors in the evaluation. *Id.* § 404.1520c(a).

The regulations also require that an ALJ "articulate how [they] considered the medical opinions and prior administrative medical findings in [the] case record." *Id.* Among the articulation requirements is the requirement that the ALJ engage in a source-level articulation. *Id.* § 404.1520c(b)(1). While the ALJ does not need to articulate how they considered the § 404.1520c(c) factors for each individual medical opinion, the ALJ must articulate how they considered the factors for each medical source that has provided a medical opinion(s) or prior

13

administrative medical finding(s). *Id.* And while the ALJ is not required to address each of the five factors for every medical opinion, the ALJ must at least "explain how [they] considered the supportability and consistency factors . . . ." *Id.* § 404.1520(b)(2).

## VII. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings [DE-18] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-20] is DENIED, and this matter is REMANDED to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this Order.

SO ORDERED, the 30th day of September, 2021.

_____
Brian S. Meyers
United States Magistrate Judge